VANGUARD INSURANCE COMPANY, Appellant,

v.

Harvey A. STEWART et al., Appellees.

No. 17461.

Court of Civil Appeals of Texas, Houston (First Dist.).

Nov. 8, 1979.

Rehearing Denied Dec. 6, 1979.

Fulbright & Jaworski, John Eddie Williams, Jr., Houston, for appellant.

Helm, Pletcher, Hogan & Burrow, Michael Y. Saunders, Houston, for appellees.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

COLEMAN, Chief Justice.

This is an appeal from a judgment for the insureds, Harvey A. Stewart and his wife Dorothy Stewart (Stewart), and against the insurer, Vanguard Insurance Company (Vanguard), for property damage and medical payments provided in a policy of insurance covering an airplane. Vanguard appeals, asserting that there is no evidence, or insufficient evidence, to support the jury's answer to certain issues and that the trial court erred in including in its charge to the jury instructions setting out the rules of law relating to the construction of insurance contracts. The judgment will be reversed.

This controversy arose out of the February 8, 1975 crash of a Cessna 180 owned by Harvey Stewart at or near the Ruidoso, New Mexico airport. Stewart was listed as the insured on an insurance policy covering the aircraft issued by Vanguard. The policy provided coverage for medical expenses of the airplane occupants, and for any physical damage to the Cessna aircraft.

At the time of the accident Harvey Stewart occupied the left front seat and Gerald T. Greak occupied the right front seat. Dorothy Stewart and Elizabeth Greak were passengers. There is evidence that both Stewart and Greak piloted the plane at various times during this trip, and that at the time of the crash Greak was the pilot in command and actively operating the controls of the airplane.

Vanguard denied that the airplane was covered by the provisions of the policy at the time of this accident by reason of the following policy provision:

"When the aircraft is operated while in motion, insurance will be effective only when said operation is by a pilot designated below who is possessed of a current and valid pilot certificate of the kind specified with appropriate ratings and a current medical certificate, . . .

"A pilot approved by the Named Insured provided he possesses a private or commercial pilot certificate and has logged at least 750 flying hours as a pilot in command which includes at least 50 hours in a single engine aircraft equipped with a conventional landing gear and 10 hours in Cessna 180 aircraft."

The evidence established that Stewart lacked a current medical certificate. In response to special issues the jury found (1) that Greak was operating the plane at the time of the crash, (2) that Greak had logged at least 10 hours in a Cessna 180 aircraft as pilot in command, (3) and that at the time of the crash Greak had logged as pilot in command at least 50 hours in single engine aircraft equipped with conventional landing gear.

The policy contains no definition of the terms "logged", "pilot in command", and "conventional landing gear".

The evidence was clearly sufficient to support the finding of the jury that Greak was operating the plane at the time of the crash. Evidence was also sufficient to support a finding that at the time of the crash Greak had logged as pilot in command at least 50 hours in single engine aircraft equipped with a tricycle landing gear. There was evidence that at the time of the crash the tricycle landing gear was considered a conventional landing gear. The vital issue in the case is the meaning of the term "logged" as used in the policy of insurance.

There is testimony that all pilots maintain a log book. The Federal Aviation Administration requires signed entries in a log book as evidence to support an application for renewal of licenses or for advanced licenses. There is no requirement that all flights be logged on the pilot's log book, but an examiner for aviation licenses will not recognize experience gained by flying unless the flight is noted in the pilot's log book. There is testimony that an instructor's flight time is noted in a student's log book signed by the instructor, but it appears that this procedure is for the benefit of the student when he seeks to show his qualifications for a pilot's license. There is no specific testimony that Mr. Greak logged any time as a flight instructor for Mr. Stewart. Mr. Stewart's log book shows the total flight time which he shared with Mr. Greak. The log book also shows the number of hours that Mr. Stewart had the controls on each flight. A mathematical calculation would show the number of hours that Mr. Greak controlled the airplane in flight. Mr. Greak did not sign Mr. Stewart's log book entries for any flight.

In order to show that the plane was covered by the policy there must be evidence that Mr. Greak has logged 10 hours flying time in a Cessna 180 either in his own log book or in a student's log book certified by him as correct. While there is testimony that Mr. Greak gave Mr. Stewart instruc-

tions while flying with him, there is no testimony that he logged time as an instructor either in Mr. Stewart's log book or in his own log book. In a deposition Mr. Greak testified that he had logged no time as pilot in command of a Cessna 180 aircraft. At the trial he testified that it was pretty obvious to him and also from his examination of Mr. Stewart's record that he has logged more than 6 hours total flight time. He also testified that there is a difference between flying time and log time to all pilots. He testified that he did not remember whether he wrote the time down or not, but that he felt like he did write it down. At another time he testified that he thought he logged that time. At another point he was asked whether he remembered specifically that he had logged in his log book 10 hours as a pilot in command of a Cessna 180 aircraft prior to the crash. He testified that he did not specifically remember recording 10 hours as a pilot in command of a Cessna 180 aircraft but that it was a good possibility that he did do so. Finally Mr. Greak summarized his testimony by saying that he didn't specifically remember writing the time down in his book, but that there is an excellent chance that he logged the time. There was no doubt in his mind that he flew that aircraft a minimum of 10 hours prior to the accident but not prior to the flight during which the accident happened.

Mr. Stewart testified that he could ascertain from his log book that Mr. Greak flew the Cessna 180 a minimum of 9 hours prior to the trip to Ruidoso. He testified that Mr. Greak flew the plane approximately 3 1/10 hours on that trip. Mr. Stewart did not record the number of hours either he or Mr. Greak had the controls on the Ruidoso trip because after the accident the notes which he had made during the flight were in disarray and were not available to him for a long period of time. There is no testimony that anyone made a log entry of the number of hours flown on that trip. The log book notes the point of origin of the flight and the destination, the date and the description of the plane, and in the "remarks" column the word "wreck". The log

book does not reflect that Mr. Greak was in the plane on that date.

 Where the policy expressly requires "log time", evidence of "flying time" is insufficient. *Marson Coal Co. v. Insurance Co., Pennsylvania*, 210 S.E.2d 747 (W.Va. 1974).

 It is well settled that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer. When the language of an insurance contract is ambiguous, than the construction which affords coverage is the one that should be adopted. *Glover v. National Life Insurance Underwriters*, 545 S.W.2d 755 (Tex.1977).

 As a general rule contracts of insurance are to be strictly construed in favor of the insured. However, this does not affect the further general rule that contracts of insurance are to be construed as other contracts, and that all parts of the contract are to be taken together, and that such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. The meaning to be given the language used in a contract is a question of law. Ordinarily the intention of the parties as expressed or apparent in the writing will determine the intent of the parties, for it is objective and not subjective intent that controls. Where the language of an insurance contract is plain, it must be enforced as made. *Republic National Life Insurance Company v. Spillars*, 368 S.W.2d 92 (Tex.1963).

 There is no evidence that Mr. Greak had logged 10 hours in a Cessna 180 aircraft at the time of the crash. The jury finding to the contrary is without support in the evidence.

It is further adjudged and decreed that no insurance coverage under Policy No. 2711 issued by Vanguard Insurance Company is afforded Harvey A. Stewart, Dorothy Stewart, Gerald T. Greak and Liz C. Greak which would render Vanguard Insurance Company liable for any of the damage suffered by them in the occurrence of February 8, 1975, when an aircraft described in that policy crashed.

The judgment of the trial court is reversed and judgment is here rendered that Harvey Stewart and Dorothy Stewart take nothing by their suit.