## CANAL INSURANCE COMPANY, Plaintiff,

### v.

## RANGER INSURANCE COMPANY and Pan American Fire & Casualty Company, Defendants.

### Civ. A. No. 78–1934.

United States District Court,
D. South Carolina,
Greenville Division.

Feb. 21, 1980.

---

**494**

R. Frank Plaxco, O. Doyle Martin, Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

Louis P. Howell, Spartanburg, S. C., for defendants.

ORDER AND STIPULATION OF FACTS

HEMPHILL, Chief Judge.

Canal Insurance Company (Canal) is seeking to recover a pro-rata contribution from Ranger Insurance Company (Ranger) and Pan American Fire & Casualty Company (Pan American) for settlements made by Canal following an automobile accident in Florida. The parties have agreed to stipulate to the facts and submit the case on briefs to this court for decision. All pertinent papers have been filed, the matter is ready for decision, accordingly this court adopts the stipulation of facts and makes the following conclusions of law.

*Stipulations of Fact*

1. Canal, a South Carolina corporation, is seeking to recover a pro-rata contribution from Ranger, a New York corporation, and Pan American, a Texas corporation, for settlements made by Canal in the amount of $108,741.30 following an accident on August 30, 1974 in Florida.

2. At all material times herein, Aubrey E. Bohanon, Ocala, Florida, was the owner of Bo's Thrift, Inc., a Florida corporation. As a part of its operations, Bo's Thrift, Inc. operated Thrift Oil Company, a fuel oil business within a 50 mile radius of Ocala, several service stations in Ocala, Florida, and Bo's Truck Lines, a long-haul trucking operation.

3. On June 12, 1974, Canal issued Policy No. 81 12 34 to Bo's Thrift, Inc. The policy was endorsed as of July 18, 1974 to insure the interests of Bo's Truck Lines and as of July 25, 1974, the named insured under the policy was amended to read Bo's Truck Lines. This policy provided liability coverages of $100,000.00 for each person, $300,000.00 for each accident, and $50,000.00 property damage.

4. On January 3, 1974, Ranger issued its policy CGA492180 to Bo's Thrift, Inc. and Aubrey E. Bohanon, with liability limits of $100,000.00/$300,000.00/$100,000.00. On January 12, 1973, Pan American issued its policy RU232087 to Aubrey E. Bohanon and Bo's Thrift Service, Inc. with liability limits of $1,000,000.00, being an umbrella policy and furnishing excess limits to the underlying Ranger policy.

5. On August 30, 1974, all three policies named above were in effect. On that date, a 1969 White tractor and a 1956 Brown trailer, owned by Bo's Thrift, Inc., were being used to haul 405 cases of Mobil Motor Oil from Thrift Oil Company from Gainesville, Florida, to Ocala, Florida, a distance of about 35–40 miles. The tractor-trailer unit was being driven by Rufus Ramsey, an employee of Thrift Oil Company and, en route, Ramsey collided with an automobile occupied by two people, resulting in death to one and severe injuries to the other.

6. Following the accident, Canal understood the investigation of the accident and concluded that the driver Ramsey was at fault. With no knowledge of the existence of the Ranger and Pan American policies, Canal negotiated a compromise of the claims, paying a total of $108,741.30, of which $6,395.50 was property damage, and $102,345.80 was related to the death and personal injuries. In addition to this, Canal spent $765.49 in adjusting the losses.

7. The 1969 White tractor was listed on the Canal policy. The 1956 Brown trailer was not. Neither the tractor nor the trailer were listed on the Ranger or Pan American policies. Those policies provided comprehensive liability coverage which would apply to any vehicle owned or operated by their insured. The Ranger and Pan American policies also were gross receipts basis policies, meaning that an initial premium would be charged, and later the insured's business would be audited to determine gross receipts, and the final premium would be adjusted annually, based upon the gross receipts of the insured during the period. There is no question but that the Canal policy covered the tractor involved in the

accident. It did not cover the trailer, but no policy defense was raised about this. The Ranger policy's schedule of automobile coverages provides coverages for owned automobiles, hired automobiles, and non-owned automobiles, so long as these were used for purposes permitted by the policy. The Pan American umbrella policy simply tracked the coverage of the Ranger policy and would provide for the same coverages as the Ranger policy.

## CONCLUSIONS OF LAW

A. This action was brought pursuant to 28 U.S.C. § 1332, alleging that diversity of citizenship exists between the parties and the amount in controversy exceeds the sum of $10,000. The stipulations of fact support this court's jurisdiction over the matter.

■ B. Ranger cannot exclude the tractor-trailer unit from its policy coverage on the grounds that the unit was not listed in the schedule of insured vehicles. The policy defines an "automobile", in part as, "a trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) . . .." Thus the vehicle involved in the accident would be considered an automobile. However the vehicle owned by Bo's Thrift, Inc. was not listed on the schedule of "Owned Automobiles" in the Ranger policy. Whether Ranger must cover the loss despite this omission, involves a question of what Ranger contracted to insure. In Section I, the policy stated that Ranger would pay all sums the "insured" is legally obligated to pay insofar as they are "caused by an occurrence and aris[e] out of the ownership, maintenance or use, . . ., of *any* automobile." (Emphasis deleted and added.) By this language Ranger has agreed to insure "all risks" relating to automobile use, maintenance or ownership, which means that Ranger must show that an exclusion omits the unscheduled automobiles. None exists, [Section I(a)–(f)] and defendants do not claim that their contractual duties have been nullified by fraud or a material misrepresentation. Thus the vehicle comes within the coverage.

Defendants contend that no premium was collected for the unlisted vehicle, but this court is not so sure. The policy itself shows that premiums are based upon an annual audit, an audit of the insured's business during the preceding year, and the premium initially paid is only an advance toward the final premium. The audit, when conducted, would consider the gross receipts of the company during the year. There is nothing to indicate that Ranger failed to charge a premium for this tractor-trailer unit.

Defendants also point out that Bo's Thrift would not intend to create double coverage by taking out more insurance policies than it needed. Perhaps it would not so intend, but the contractual language indicates it did, an occurrence which is not at all uncommon especially where the use of equipment is covered by various policies.

■ C. The named insureds under the Ranger and Pan American policies were Aubrey E. Bohanon and Bo's Thrift, Inc. The insureds operated a variety of businesses under various names, using numerous vehicles for varying purposes. As stated in the stipulations of facts, one of the wholly owned subsidiaries was Thrift Oil, a fuel oil business operating within a fifty mile radius of Ocala, Florida. Another subsidiary was Bo's Truck Lines which handled long-haul trucking operations, defined as hauls in excess of 50 miles. Defendants contend that the accident occurred while the truck was engaged in the business of Bo's Truck Lines, an activity which, it is claimed, would not be an "insured" activity under the policy.

This position is not in accord with the facts, as stipulated, which state that the tractor-trailer rig was being driven by a Thrift Oil Company employee at the time of the accident, and that the load being carried was 405 cases of Mobil Motor Oil for Thrift Oil Co., on a short haul run of less than 50 miles. Contrary to defendants' position, this activity could not be considered to be within the scope of Bo's Truck lines which is a long haul operation. From the stipula-

tions, it appears that the vehicle owned by Bo's Thrift was being used by Thrift Oil Company.

In Section II, the "insureds" under the policy are the named insured [Section II(a)], and any other person using an owned automobile with the permission of the named insured, so long as he does not exceed the scope of his permission. [Section II(c)] Subsection (d) then extends this coverage to an organization liable under the acts of (a) or (c) above. This court is satisfied that permission can be found from the facts which reveal a variety of businesses under common ownership which can be expected to use vehicles interchangeably. There is no evidence that the permission to use for business purposes was abused or exceeded. Consequently, Ramsey and Thrift Oil Co. were "insureds" under the policies,[1] and coverage for the losses incurred exists.

■ D. The conclusion that the Ranger and Pan American policies provide coverage, raises the problem of distributing liability. There is no question that an insurer which pays more than its proportionate share of a debt which is equally and concurrently due by another insurer, or other insurers, has a right to contribution from the others, based upon the equitable principle that those who insure the same duty ought to share equally in the results of a default. See, *Travelers Ins. Co. v. Allstate Ins. Co.*, 249 S.C. 592, 155 S.E.2d 591 (1967); *Cooper v. Georgia Cas. & Sur. Co.*, 244 S.C. 286, 136 S.E.2d 774 (1964); and, *Lucas v. Garrett*, 209 S.C. 521, 41 S.E.2d 212 (1947). The question of this lawsuit is whether Ranger and Pan American are equally and concurrently liable on the debt paid by Canal.

■ E. Under Condition 13, the Canal policy provides:

> If the insured has other insurance against loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all valid and collective insurance against such loss. . . .

Thus Canal's coverage was collectible even if other insurance was in force, although Canal did reserve the right to collect the pro rata shares of the applicable limits of other insurers if Canal paid more than its pro rata share of the limits.

The Ranger policy also has an "Other Insurance" provision. It is considerably more detailed than the Canal provision but it provides in pertinent part:

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy than that stated in the applicable contribution provision below.
>
> · · ·

The first contribution provision is stated to apply when the other applicable insurance provides for a contribution by "equal shares," which is not the case with the Canal policy since it provides for contribution based upon applicable limits of liability. The second contribution provision in the Ranger policy is applicable here, and it states:

> If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Under the terms of the policy, Ranger agreed, if, as has been decided, coverage was present, to pay up to its pro rata share of the applicable policy limits.

F. The only remaining issue is whether Canal and Ranger are entitled to contributions from Pan American, the "Umbrella Excess Liability" insurer. That policy states that it was issued based upon a warranty by the insured that there was underlying insurance in specific amounts. The Pan American policy purports to be simply an excess policy to the Ranger policy, and it would provide the same coverages as the Ranger policy.

---

1. Pan American, an "Umbrella Excess Liability Policy," tracked the coverage of Ranger.

Pan American asserts that the pro rata sharing should occur between Canal and Ranger, and that it should be excluded because it provides only excess coverage which was not reached. Numbers of cases have held that when two insurers are jointly liable for a loss that each must pay in the same proportion that its applicable policy limits bears to the aggregate limits of both policies. See, *e. g. Rouse v. Greyhound Rent-a-Car*, 369 F.Supp. 1072 (M.D.Fla. 1973); *Vance Trucking Co. v. Canal Ins. Co., supra.* In neither of those cases, however, was the issue of umbrella excess limits considered, but that specific issue was considered in *Hartford Accident & Indemnity Co. v. Liberty Mutual Ins. Co.*, 277 So.2d 775 (Fla.1973). There, the Liberty Mutual policy had initial limits of $100,000.00 per person and $300,000.00 per accident. An endorsement for that policy attempted to deal with the fact that Liberty Mutual had issued a number of policies to its insured, and the endorsement provided that in the event of an accident, Liberty Mutual's total maximum liability would be $1,000,000.00. The Florida Supreme Court said that there was nothing to indicate that the $1,000,000.00 should not be applicable as the limit of liability under the Liberty Mutual policy, and the court required the pro rata sharing to be on the basis of that total coverage, rather than the primary limit of $100,-000.00. Since the Hartford policy provided $300,000.00 for one person, the total limits became $1,300,000.00, and that became the base for proportionate sharing.

When the *Hartford* case was sent back to the lower court for implementing the details, the lower court prorated only on the primary coverages, holding that the losses which were paid never exceeded the primary coverages. On a new appeal, the District Court of Appeals reversed and directed the lower court to follow the Supreme Court's earlier decision to prorate on the basis of *total* policy limits, including the excess coverage, even though the losses paid did not exceed the primary coverages. *Hartford Accident & Indemnity Co. v. Liberty Mutual Ins. Co.*, 321 So.2d 143 (Fla.D.C. A.1975).

■ This litigation arose in Florida, involving contracts of insurance entered into in Florida. Under the choice of law doctrine of the forum state, South Carolina, *Jones v. Prudential Ins. Co.*, 210 S.C. 264, 42 S.E.2d 331; *Barkley v. International Mutual Ins. Co.*, 227 S.C. 38, 86 S.E.2d 602; and under the principles set forth in *Restatement of Conflict of Laws (2d)*, § 193 (1971), the law of Florida where the contract was executed, the cause of action arose, the insured resides, and the risk is located, must govern.

The decision of an intermediate appellate court interpreting the meaning of its superior tribunal's language, is not to be easily disregarded by this court. Familiarity with the Florida law on contribution, and the trends of Florida law, are attributes which this court does not possess. As held in the *Hartford* case, nothing in the Pan American policy demonstrates any basis, under Florida law, for not applying the full limits of all three policies.

From time to time the argument is made that, as a matter of common knowledge, the premium for excess limits are not as costly as those for primary limits, and that the court should take that factor into consideration. The same argument has been made about stacking uninsured motorists coverages, but this "small premium" argument was expressly rejected in *Werley v. United States Automobile Association*, 498 P.2d 112, where the court declared:

> As far as the small premium is concerned, the issuance of a policy of insurance is always a risk-taking venture. Calculation of the premium to be charged for that risk is a matter within the competency of the insurance carrier. 498 P.2d at 119.

■ The Ranger and Pan American policies, as one line of insurance, furnished a total coverage of $1,100,000.00, and the Canal policy, as another line of coverage, furnished $100,000.00, so that the maximum coverage of all policies was $1,200,000.00. Canal's portion of the bodily injury aspect

of the loss here should be $\frac{1}{12}$th of the total, and Ranger and Pan American should pay $\frac{11}{12}$ths of the total. On the property damage portion of the loss, Canal's coverage was $50,000.00, and the Ranger and Pan American coverage was, again, $1,100,-000.00, so that Canal should pay five (5%) percent of the property damage loss, and Ranger and Pan American should pay 95%. Based on these proportions, the respective liabilities of the parties should be as follows:

Canal

Bodily Injury

1. $\frac{1}{12}$th (8%) X $102,345.80 = $8,187.66

Property Damage

2. 5% X $6,395.50 = $319.78

Investigation Expenses

3. $\frac{1}{12}$th (8%) X $765.48 = $61.24

    Total    $8,568.68

Ranger/Pan American

Bodily Injury

1. $\frac{11}{12}$ths (92%) X $102,345.80 = $94,158.14

Property Damage

2. 95% X $6,395.50 = $6,075.73

Investigation Expenses

3. $\frac{11}{12}$ths (92%) X $765.48 = $704.24

    Total    $100,938.11

In conclusion, it is the finding of this court that the Ranger and Pan American policies cover the loss paid by Canal, and that each should contribute to Canal its pro rata share of the applicable limits. Accordingly, it is the order of this court that Ranger and Pan American pay to Canal the sum of $100,938.11 as their proportionate share of the losses incurred.

AND IT IS SO ORDERED.